UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:26-cv-80455-EA

JAMES SCRUGGS,

Plaintiff,

v.

GENESIS EDUCATIONAL SERVICES
OF FLORIDA, INC. D/B/A PALM BEACH
ACADEMY OF HEALTH & BEAUTY,

Defendant.
_______________________________________/

**REPORT AND RECOMMENDATION ON PLAINTIFF'S**
**MOTION FOR ENTRY OF DEFAULT JUDGMENT (ECF No. 8)**

Pending before the Court is the Motion of Plaintiff, James Scruggs, for Default Final Judgment against Defendant, Genesis Educational Services of Florida, Inc. d/b/a Palm Beach Academy of Health & Beauty ("Genesis"). ECF No. 8. U.S. District Judge Ed Artau referred the Motion to me for a report and recommendation. ECF No. 9. For the reasons discussed below, it is **RECOMMENDED** that Plaintiff's Motion be **GRANTED IN PART AND DENIED IN PART**.

## I. BACKGROUND

Mr. Scruggs filed his Complaint on April 21, 2026, asserting claims for race and color discrimination, retaliation, and hostile work environment under Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act ("FCRA"). ECF No. 1.

Mr. Scruggs filed a return of service indicating Genesis was served with process, yet Genesis has not appeared in this matter, nor has it answered or otherwise

responded to the Complaint. ECF No. 5. Mr. Scruggs filed a Motion for Clerk's Entry of Default on May 22, 2026, and the Clerk entered default on the same day. ECF Nos. 6–7. Genesis did not respond to the Motion for Clerk's Entry of Default. Then, on July 29, 2026, Mr. Scruggs filed this Motion for Default Judgment, to which Genesis did not respond. ECF No. 8.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 55(b), a court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear. Fed. R. Civ. P. 55(b). After entry of the clerk's default, the court may enter default judgment against the defendant so long as the defendant is not an infant or incompetent person. Fed. R. Civ. P. 55(b)(2). When default judgment is entered, "the defendant 'admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.'" *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). "The defendant, however, is not held to admit facts that are not well-pleaded or to admit conclusions of law." *S.E.C. v. Wright,* 261 Fed. Appx. 259, 261 (11th Cir. 2008) (citing *Cotton v. Mass. Mut. Life Ins. Co.,* 402 F.3d 1267, 1278 (11th Cir. 2005)).

A court must review the sufficiency of the complaint before determining whether a moving party is entitled to default judgment pursuant to Rule 55(b). *See United States v. Kahn*, 164 F. App'x 855, 858 (11th Cir. 2006) (citing *Nishimatsu*, 515 F.2d at 1206). The Eleventh Circuit has explained that this standard is "akin to that

necessary to survive a motion to dismiss for failure to state a claim." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015); *see also United States v. Genesis II Church of Health and Healing*, 476 F. Supp. 3d 1283, 1289 (S.D. Fla. 2020) (same). "'While a complaint . . . does not need detailed factual allegations,' a plaintiff's obligation to provide the grounds of his entitlement to relief 'requires more than labels and conclusion, and formulaic recitation of the elements of the cause of action will not do.'" *Fernandez de Cordoba v. Flores*, No. 17-cv-20122, 2018 WL 1830805, at *2 (S.D. Fla. Jan. 10, 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), *report and recommendation adopted*, 2018 WL 1811945 (S.D. Fla. Feb. 9, 2018). "[E]ven after default, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action." *Tabuteau v. HSBC USA, Nat'l Ass'n,* No. 14–CV–21513, 2014 WL 4219588, at *1 (S.D. Fla. Aug. 25, 2014) (citing *Nishimatsu,* 515 F.2d at 1206).

If the admitted facts are not sufficient to show liability, the Court can allow the movant to supplement the evidentiary record. Fed. R. Civ. P. 55(b)(2)(C), (D). If liability exists, the Court must then turn to the question of relief. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1364 n.27 (11th Cir. 1997). After ascertaining the appropriate amount of damages, the Court must enter final judgment in that amount. *Nishimatsu*, 515 F.2d at 1206; *see also PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1216 (S.D. Fla. 2004).

## III. DISCUSSION

### *A. Sufficiency of the Complaint*

The Complaint brings nine claims for relief under Title VII and the FCRA. Because all counts allege duplicative and overlapping claims for damages, the Court need not address the sufficiency of all nine counts. Rather, the Court may limit its analysis to Count I, race and color discrimination under Title VII, which authorizes all the damages Mr. Scruggs seeks. *See Bedabox LLC v. Toy Overlord, Inc.*, No. 24-61821-CIV, 2026 WL 1648989, at *5 (S.D. Fla. June 8, 2026) ("Because this Court finds that Plaintiff is entitled to default judgment as to Count I for Breach of Contract, this Court need not address Plaintiff's alternative claims for relief."); *Wesco Ins. Co. v. Repasky*, No. 19-81734-CIV, 2020 WL 3129145, at *3 (S.D. Fla. June 12, 2020) ("Because the Court will enter a final default judgment as to both Counts I and II—and because those counts entitle Wesco to all the relief it seeks—the Court need not address Wesco's arguments about Counts III (an alternative theory of liability) or IV (an alternative form of relief).").

Count I alleges retaliation under Title VII, which makes it unlawful for an employer, among other things, "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color … or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). To survive dismissal in a Title VII case, a plaintiff must allege sufficient factual matter, accepted as true, to plausibly suggest intentional discrimination. *Smith v. Pepsi Bottling Group*, No. 24-11597,

2026 WL 937070, at *6 (11th Cir. Apr. 7, 2026); *see also Davis v. Miami-Dade Cnty.*, No. 23-12480, 2024 WL 4051215, at *3-4 (11th Cir. Sept. 5, 2024) (noting that Title VII plaintiffs need not satisfy the elements of a prima facie case of discrimination under *McDonnell Douglas* to survive dismissal).

The Court has reviewed the factual allegations of Count I and finds them sufficient to state a plausible claim for discrimination based on race or color. The relevant allegations include the following:

1. Genesis is a qualified employer for purposes of Title VII. ECF No. 1 ¶9.
2. Mr. Scruggs was an employee of Genesis and is an African-American man. ¶¶8, 10.
3. Mr. Scruggs began his employment with Genesis as an Admissions Coordinator and was promoted to Career Service Representative shortly after commencing employment. ¶¶11–12.
4. Mr. Scruggs reported to Ann Bouchard, a White woman and Chief Operating Officer of Genesis, and Dr. Joseph Angley, a White man. ¶13.
5. Genesis transferred Mr. Scruggs to another department and replaced him with Ms. Bouchard's son, Timothy Wilcox, a White man who was less qualified than Mr. Scruggs. ¶14.
6. When Mr. Scruggs asked for a salary increase commensurate with his increased responsibilities, Ms. Bouchard stated there was no room in the budget for such an increase. ¶15. But shortly thereafter, Wilcox was hired

and was given a higher salary than Scruggs, despite Wilcox's lesser qualifications and experience. *Id.*

7. Mr. Scruggs was called into the Campus Director's office to discuss a "conflict" Ms. Bouchard had with his hairstyle, which was questioned and made the subject of a dress code discussion "because it was consistent with his identity as a Black man." ¶17.

8. Throughout Mr. Scruggs' time at Genesis, he was subjected to ongoing nitpicking from Bouchard about his appearance, and especially his hair. These comments targeted characteristics which were tied to his racial identity. ¶18.

9. Dress code violations were not enforced consistently, as White employees such as Bouchard and Wilcox were permitted to dress casually in a business environment, yet Mr. Scruggs' appearance was scrutinized. ¶¶19–20.

10. Mr. Scruggs attended a training session led by Dr. Angley. The session was "disorganized" and contained minimal substantive instruction, yet Mr. Scruggs answered Dr. Angley's questions honestly and thoughtfully based on the limited resources and his prior training. ¶¶21–23.

11. After the training, Mr. Scruggs was criticized, ridiculed, and reassigned to another department. ¶24. Mr. Wilcox was promoted in his place. *Id.*

12. Mr. Scruggs learned that Dr. Angley requested that he be transferred to Career Services, without formal documentation and without giving Mr.

Scruggs any opportunity to address or clarify any supposed performance issue. ¶25.

13. Mr. Scruggs was replaced by Mr. Wilcox, who had no prior experience in admissions or related job duties. ¶27. Mr. Wilcox's replacement of Scruggs was the replacement of a more qualified Black professional with a less qualified White male with familial ties to Genesis' management. ¶28.
14. On November 6, 2024, Mr. Scruggs was informed that his timesheet was under review and assumed to be fraudulent, even though he had accurately reported his time related to off-site career service visits that were routine aspects of his position. ¶29.
15. Ms. Bouchard called Mr. Scruggs into her office and asked whether he could prove his whereabouts during the time in question, and Mr. Scruggs stated he could. During the meeting, Dr. Angley stated that Ms. Bouchard called Mr. Scruggs in to fire him, though he was not fired at the meeting. ¶30.
16. No error or misconduct was ever presented to Mr. Scruggs; he maintained consistent documentation of work-related travel; and the places he visited confirmed his presence onsite. ¶31.
17. Other employees in his position worked under the same structure and same types of events, but their time records were not questioned. ¶32.
18. Mr. Scruggs repeatedly made verbal complaints to Ms. Bouchard regarding the discriminatory treatment he was experiencing from her and other staff. ¶33.

19. After Genesis passed the accreditation process, Genesis engaged in a plan to terminate the employment of the majority of its employees of color, including eight individuals identified in the Complaint. ¶¶34–35.

The Court finds the above allegations sufficient to state a plausible claim under Title VII. The Court therefore finds a "sufficient basis" for entry of a default judgment on Count V for purposes of *Surtain*, 789 F.3d at 1245. Given this conclusion, the Court need not address the sufficiency of the remaining counts of the Complaint.

*B. Damages*

Mr. Scruggs seeks $27,720.00 in back pay, $68,640.00 in front pay, and $20,000 for emotional distress, for a total amount of $116,360.00. ECF No. 8.

1. <u>Back Pay</u>

Mr. Scruggs seeks $27,720.00 in back pay. ECF No. 8 at 6–7. Title VII authorizes back pay to remedy intentional employment discrimination. 42 U.S.C. § 2000e-5(g)(1). The purpose of back pay is to make plaintiffs whole for the damages caused by unlawful discrimination. *Darnell v. City of Jasper, Ala.*, 730 F.2d 653, 656 (11th Cir. 1984). Back pay means the difference between the actual wages earned by a plaintiff and the wages he or she would have earned but for the unlawful discrimination. *Akouri v. Florida Dept. of Transp.*, 408 F.3d 1338, 1343 (11th Cir. 2005). Back pay normally runs from the date of the adverse employment action up to the date of the final judgment. *See Nord v. United States Steel Corp.*, 758 F.2d 1462, 1473 (11th Cir.1985) (reversing where district court ordered back pay up to the date of bench trial rather than date of final judgment four months later).

The rule is slightly different where, as here, a defendant goes out of business prior to the date of final judgment. To award back pay in such circumstances would make a plaintiff better than whole since it would compensate the plaintiff during a time when he or she would not have had a job with defendant, for reasons unrelated to discrimination. For this reason, courts generally recognize that back pay ceases when a defendant goes out of business. *See Howes v. Keokuk Hosp. Inv., LLC*, No. 3:07-CV-00051, 2008 WL 11333890, at *3 (S.D. Iowa Jan. 28, 2008) (awarding back pay up to date of employer's corporate dissolution); *Grame v. Osborn Transp., Inc.*, No. 99-4120-DES, 2001 WL 951357, at *2 (D. Kan. July 19, 2001) ("[W]here an employer goes out of business and terminates all employees, plaintiff's eligibility for back pay ceases."); *E.E.O.C. v. Regency Architectural Metals Corp.*, 896 F. Supp. 260, 271 (D. Conn. 1995) (stating that "the cut off point for recovering back pay is ... when the shop where [plaintiff] was working went out of business"). In this case, the record shows that Genesis filed a corporate dissolution on November 11, 2025. *See Williams v. Genesis Educational Services of Florida, Inc.*, Case No. 26-cv-80445, DE 9 ¶ 2, DE 18 at 1.[1]

In addition, Title VII plaintiffs owe a duty to mitigate their damages by using reasonable diligence to find other suitable employment following an unlawful termination. *See Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 231 (1982). To the extent a plaintiff finds other suitable employment, any such earnings must be deducted from

---

[1] Records of Genesis' corporate dissolution are available from the Florida Division of Corporations at www.sunbiz.org of which the Court may properly take judicial notice. *See Am. Marine Tech., Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1082 (S.D. Fla. 2019).

an award of back pay. *See Nord*, 758 F.2d at 1471–72 (reversing where district court failed to reduce back pay award by amounts earned by plaintiff in mitigation).

Applying these standards here, the Court finds that Mr. Scruggs should receive a back pay award running from the date of his termination up through the date of August 4, 2025, the date he obtained new employment. Mr. Scruggs has submitted a sworn declaration attesting that Defendant terminated his employment on or around November 15, 2024. ECF No. 8-1 ¶¶28–29. At the time of termination, Mr. Scruggs earned $660.00 per week with an annual salary of $34,320.00. (DE 10-1 ¶ 15). He remained unemployed from the date of his termination through August 4, 2025, a period he describes as approximately 37 weeks. *Id.* ¶29. While he again became unemployed June 22, 2026, Genesis has already ceased operations by that date, so Mr. Scruggs is not entitled to additional back pay from June 22, 2026, going forward.

Thus, the calculation is adjusted to 37 weeks multiplied by $660.00, for a total back pay award of $17,820.00.

2. <u>Front Pay</u>

Mr. Scruggs seeks $68,640.00 in lost front pay. While Title VII authorizes a front pay award in some circumstances, such an award is not permitted when the employer goes out of business prior to the date of final judgment. *See Sandlin v. Corp. Interiors Inc.*, 972 F.2d 1212, 1215 (10th Cir. 1992) ("We agree with the district court that reinstatement is not possible and front pay is inappropriate if a defendant company has ceased doing business."). As with back pay, to award front pay in such circumstances would make a plaintiff better than whole because it would compensate

the plaintiff during a time when he would not have had a job with the defendant at all, for reasons unrelated to discrimination. Here, Genesis filed its dissolution before the entry of judgment; thus, the Court should decline to award front pay.

3. Emotional Distress Damages

Mr. Scruggs seeks $20,000 for emotional distress. ECF No. 8 at 8–9. Title VII allows aggrieved plaintiffs to recover compensatory damages for emotional pain, suffering, inconvenience, and mental anguish. 42 U.S.C. § 1981a(b). A factfinder has broad discretion in awarding such damages under Title VII, provided they are "proven by competent, sufficient evidence." *Akouri*, 408 F.3d at 1344–45.

Applying these standards here, the Court finds that Mr. Scruggs should be awarded $20,000 for emotional distress damages. He has submitted evidence showing he was forced to go to work each day worried about continued harassment and discrimination. ECF No. 8-1 ¶34. Mr. Scruggs felt targeted and afraid to return to work on a daily basis. *Id.* ¶35. Following his termination, he experienced additional emotional harm in the form of stress, anxiety, sadness, worthlessness, loss of purpose, and anger. *Id.* ¶36. Mr. Scruggs attests that he continues to experience many of these feelings daily as a residual effect of the discrimination, retaliation, and forced resignation. Id. ¶37.

Mr. Scruggs provided competent, sufficient evidence to support this award. *Carlisle v. Nat'l Com. Servs., Inc.*, 722 F. App'x 864, 870 (11th Cir. 2018) (affirming the entry of a default judgment without a hearing where the plaintiff had filed an affidavit concerning his emotional distress damages); *Garcia v. Unit Dose Servs.,*

*LLC*, No. 23-CV-61352, 2023 WL 6962827. At *4–5 (S.D. Fla. Oct. 2, 2023) (relying on the plaintiff's affidavit to recommend $100,000 in emotional distress damages), *report and recommendation adopted*, 2023 WL 6958685 (S.D. Fla. Oct. 20, 2023). This award falls within the range of emotional distress damages awarded in other employment discrimination cases in this district.[2] For these reasons, Mr. Scruggs should be awarded $20,000 for emotional distress.

*C. Attorneys' Fees and Costs*

Mr. Scruggs seeks $7,861.20[3] in attorneys' fees and costs. ECF No. 8 at 9–10. Courts analyze requests for attorneys' fees in two steps: entitlement and amount. As to entitlement, Title VII allows attorneys' fees and costs to the prevailing party at the Court's discretion. 42 U.S.C. § 2000e-5(k). Based on the default entered here, Mr. Scruggs is the prevailing party for purposes of attorneys' fees and costs.

As to amount, courts generally calculate reasonable attorneys' fees by multiplying the number of hours reasonably expended by a reasonable hourly rate. *ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999). This number, referred to as the "lodestar," carries a strong presumption of reasonableness, but may be adjusted by the court. *Id.* A fee applicant bears the burden to prove reasonableness, which normally includes "supplying the court with specific and detailed evidence."

[2] *See, e.g., Joss v. United Home Mortg. Ctr. of Fla., Inc.*, No. 09-CV-60411, 2011 WL 13272300, at *3–4 (S.D. Fla. Jan. 26, 2011), *report and recommendation adopted*, 2011 WL 13272301 (S.D. Fla. Mar. 7, 2011); *Hudson v. Chertoff*, 473 F. Supp. 2d 1286, 1287–92 (S.D. Fla. 2007); *Bernstein v. Sephora*, 182 F. Supp. 2d 1214, 1228–30 (S.D. Fla. 2002).

[3] The Motion requests $9,061.20 in attorneys' fees and costs; however, the declaration and time records support an amount of $7,861.20.

*Norman v. Housing Auth. of City of Montgomery*, 836 F. 2d 1292, 1303 (11th Cir. 1988).

Here, Mr. Scruggs' counsel has provided the Court with billing invoices and an affidavit in support thereof. ECF Nos. 8-2, 8-3. The first step in calculating the lodestar is to determine reasonable hourly rates. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by attorneys with reasonably comparable skills, experience, and reputation." *Van De Velde NV v. Felder*, No. 15-cv-24096, 2017 WL 8895345, at *4 (S.D. Fla. May 25, 2017), *R. & R. adopted*, 2017 WL 8895340 (S.D. Fla. June 16, 2017). A court may act as its own expert in making this determination. *See Norman*, 836 F. 2d at 1303. The Court finds the hourly rates requested here ($400 for Attorney GS, $400 for Attorney AS, $300 for Attorney AG, and $175 for Paralegal Dilma) to be reasonable.

The next step in calculating the lodestar is to determine the reasonable number of hours expended on the case. In making this determination, courts generally look to factors such as (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Georgia Highway Exp.*,

*Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974); *see In re Home Depot Inc.*, 931 F.3d 1065, 1091 (11th Cir. 2019) (noting that the *Johnson* factors are typically subsumed within the lodestar analysis). Once again, courts may act as their own expert in making this determination. *Norman*, 836 F.2d at 1303.

The Court has reviewed the time records here as well as the *Johnson* factors. Based on this review, the Court finds the total number of hours of 20 to be reasonable and the time entries represent necessary and reasonable work performed by Mr. Scruggs' counsel. The Court therefore should award the full amount requested of $7,375.00 in attorneys' fees.

Regarding costs, Mr. Scruggs seeks to recover the amount of the filing fee, $405, and the fee for service of process, $81.20. ECF Nos. 8-2, 8-3. Under the Federal Rules, prevailing parties are entitled to recover costs as a matter of course unless otherwise directed by the court or statute. *See* Fed. R. Civ. P. 54(d)(1). Rule 54(d) creates a presumption in favor of awarding costs to the prevailing party. *See Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 639 (11th Cir. 1991). Such presumption, however, is not without limits and courts may only tax costs as authorized by statute. *See EEOC v. W&O, Inc.,* 213 F.3d 600, 620 (11th Cir. 2000) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 445 (1987)). Under 28 U.S.C. § 1920, fees of the clerk and fees for service of process are recoverable.

Mr. Scruggs' request for $405 for fees of the clerk is appropriate and should be granted. Fees for service of process are limited to $65.00, the standard hourly rate that the U.S. Marshal's Service charges for service of process. *Khoury v. Miami-Dade*

*Cty. Sch. Bd.*, No. 16-20680-CIV, 2018 WL 7150192, at *3 (S.D. Fla. Nov. 28, 2018) (citing *Emery v. Allied Pilots Assoc.*, No. 14-80518-CIV, 2017 WL 5175617, at *3 (S.D. Fla. May 18, 2017)). Thus, Mr. Scruggs' request for $82.00 for service of process exceeds the maximum amount permitted, and should be reduced to $65.00. 28 U.S.C. § 1920(1). The total costs awarded should be $470.00.

## IV. CONCLUSION

In sum, the following amounts should be awarded:

Back Pay: $17,820.00

Front Pay: $0

Emotional Distress: $20,000.00

Attorneys' Fees and Costs: $7,845.00

**Total: $45,665.00**

## RECOMMENDATION

For these reasons, I **RECOMMEND** that the Motion for Default Judgment be **GRANTED IN PART** as follows: Default Judgment should be **ENTERED** in favor of Plaintiff, Gillian Williams and against Defendant, Genesis Educational Services of Florida, Inc. d/b/a Palm Beach Academy of Health & Beauty in the total amount of $45,665.00, with post-judgment interest accruing at the statutory rate set forth in 28 U.S.C. § 1961.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Ed Artau, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 5th day of October 2026.

BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE